JAMES CHARLES' RACKLEY, JR., EMPLOYEE, PLAINTIFF v. COASTAL PAINTING, EMPLOYER, AND COMPANION PROPERTY & CASUALTY INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA01-1363

(Filed 15 October 2002)

### 1. Workers' Compensation— painter's fall from ladder—epilepsy—compensable

The Industrial Commission did not err in a workers' compensation action by ruling that plaintiff-painter sustained a compensable injury by accident when he fell from a 32-foot ladder as he leaned back to paint trim where defendant argued that the fall was caused by plaintiff's idiopathic condition (epilepsy). Compensation should be allowed when an injury is associated with risk attributable to the employment even though an idiopathic condition precipitated or contributed to the injury.

### 2. Workers' Compensation— attorney fees—not apportioned

An award of attorney fees in a workers' compensation case was affirmed where defendants' brief concerned only the issue of unreasonable defense under N.C.G.S. § 97-88.1, the Commission did not apportion the award between N.C.G.S. § 97-88.1 and N.C.G.S. § 97-88 (unsuccessful appeal), and it could be assumed that the entire award would have been proper under N.C.G.S. § 97-88.

Appeal by defendants from opinion and award entered 13 June 2001 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 22 August 2002.

*Taft, Taft & Haigler, P.A., by Thomas Taft, Sr., and Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer, for plaintiff-appellee.*

*Morris York Williams Surles & Barringer, LLP, by John F. Morris and Amy E. Echerd, for defendant-appellants.*

MARTIN, Judge.

Defendants appeal from the Commission's award to plaintiff of permanent total disability benefits and medical expenses, as well as an award for costs and attorney's fees under G.S. §§ 97-88 and 97-88.1. Evidence before the Commission tends to show that on 9 August

1996, plaintiff, who was 21 years of age, was employed by defendant Coastal Painting as a house painter. Around 8:30 a.m. on 9 August 1996, plaintiff and his co-workers arrived at the work site, a three-story condominium on the south end of Topsail Island. Plaintiff began his work painting the trim and fascia on the exterior of the third floor of the building, working from a 32-foot ladder that was leaned against the building and had no safety harnesses. Plaintiff's work required that he stand on the ladder, but lean back and hold onto the eave or shingles. At some point before 9:00 a.m., plaintiff fell from the ladder to the ground and sustained a "burst compression fracture at C5", resulting in quadriplegia. After surgery and rehabilitation, he remains completely disabled from work. Since his release from rehabilitation, plaintiff has resided in Florida with his mother, who has provided him with home health care.

Plaintiff does not know how he fell and there were no witnesses to the fall. Plaintiff stated that all he could remember was painting the trim and then lying on the ground in pain and unable to move his limbs. Plaintiff's co-workers were at other sides of the house when the accident happened. The owner of the house testified that she had seen the top of plaintiff's head through a window while he was painting on the ladder and then heard "a thump." Upon hearing the sound and then seeing plaintiff lying on the ground below the ladder, she ran downstairs to him. She testified that the ladder had not moved from its position against the house.

The evidence also tended to show that plaintiff suffered from photoconvulsive epilepsy, having been diagnosed with the condition at age 15. His seizures, which are grand mal seizures, are triggered by flashing lights and have occurred when he has played video games or seen the sun breaking through trees. Since his diagnosis with epilepsy, plaintiff has been on two anti-seizure medications, Dilantin, then Tegretol. When he had attempted to go off the medication in the past, plaintiff had experienced seizures. The record indicates that he may have had about eight seizures total between age 15 and the time of the accident.

There was evidence that directly after the fall, the homeowner and his co-worker saw him "shaking." Plaintiff stated to the paramedics who arrived on the scene that he may have fallen due to a seizure. According to expert medical testimony, shaking movements and blackouts are possible indications of an epileptic seizure. Plaintiff, however, had no memory loss of earlier events in the day, as he had in the past when he had seizures. He was conscious and not

RACKLEY v. COASTAL PAINTING

[153 N.C. App. 469 (2002)]

disoriented immediately after the fall and there was no evidence that he vomited, drooled, chewed his tongue, or voided his bowels.

Plaintiff's post-accident blood tests showed that he had a sub-therapeutic level of Tegretol in his system on the day of the accident. Generally, a therapeutic level measures between 4-12 micrograms per milliliter of blood, but plaintiff's results showed only 2.5 micrograms. The blood tests also show recent marijuana consumption by plaintiff and the Commission found that plaintiff smoked marijuana with his co-workers, including the owner of defendant Coastal Painting, before work on the morning he was injured.

Defendant's expert medical witness, Dr. Karner, testified that plaintiff "probably" fell because he had a seizure on the ladder. However, other expert medical witnesses testified that they could not say with any certainty that plaintiff had a seizure on the ladder or at all that day and noted that he could have had one while falling or as a result of the fall once on the ground.

Soon after the accident, plaintiff filed a Form 18 which stated that he was painting and fell. In contrast, defendant-employer's Form 19 asserted that plaintiff had a seizure and fell. In a Form 61, defendants denied plaintiff's claim, stating that it was the result of his idiopathic condition, which has no causal connection to his employment, and therefore the injury did not arise out of plaintiff's employment. The claim was heard by a deputy commissioner, who filed an opinion and award finding that the claim was compensable and awarding plaintiff permanent total disability. Defendants appealed to the Full Commission, which affirmed the deputy commissioner's opinion and award. In addition, the Commission awarded plaintiff costs and attorney's fees in the amount of $800.00 pursuant to G.S. § 97-88 and G.S. § 97-88.1, for defendants' "unsuccessful appeal to the Full Commission and their unreasonable defense of this claim." Defendants filed a Notice of Appeal to this Court.

---

The scope of appellate review of decisions of the Industrial Commission is limited to a determination of whether there is competent evidence in the record to support the Commission's findings of fact and whether the findings support the conclusions of law on which the award is based. See Boles v. U.S. Air, Inc., 148 N.C. App. 493, 560 S.E.2d 809 (2002). The issues raised by defendant in this appeal are (1) whether the Commission erred in determining that plaintiff was injured as a result of a compensable accident arising out

of and in the course of his employment, rather than as a result of an idiopathic condition independent of his employment, and (2) whether the Commission erred in awarding attorney's fees pursuant to G.S. §§ 97-88 and 97-88.1.

In order to be compensable under the Act, an employee's injury by accident must arise out of and in the scope of employment. *See* N.C. Gen. Stat. § 97-2(6) (2002). In the case at hand, there is no dispute as to whether plaintiff sustained an injury by accident, a fall having long been accepted as the kind of unusual event that comprises an "accident." *See Taylor v. Twin City Club*, 260 N.C. 435, 437, 132 S.E.2d 865, 867 (1963). Likewise, the parties agree that the accident occurred in the scope of employment, having taken place during work hours and while plaintiff was engaged in the performance of his duties. *Id.* at 437-38, 132 S.E.2d at 867.

[1] The only issue in dispute regarding the compensability of plaintiff's claim is whether the accident arose out of his employment. In support of their contention that the injury did not arise out of plaintiff's employment, defendants argue that when an injury is caused solely by a plaintiff's idiopathic condition, there is no link with employment and no compensation award should be made. *See Hollar v. Montclair Furniture Co., Inc.*, 48 N.C. App. 489, 269 S.E.2d 667 (1980). The Commission found that "the greater weight of the evidence does not show that an idiopathic condition, plaintiff's epilepsy, was the sole proximate cause of the injuries plaintiff sustained" and that the cause of plaintiff's fall was, in fact, "unclear." Defendants argue that the evidence, particularly the testimony of Dr. Karner and the fact that witnesses said that plaintiff appeared to be shaking or convulsing after the fall, indicate that plaintiff's fall was caused by a seizure alone. However, defendants' interpretation of the evidence is not the only reasonable interpretation. It is for the Commission to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it. *See Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998). As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal. *See De Vine v. Steel Co.*, 227 N.C. 684, 685, 44 S.E.2d 77, 78 (1947).

We hold that the Commission's findings regarding the cause of plaintiff's injury are adequately supported by the evidence. There was contradictory evidence as to whether plaintiff had a seizure, there were no witnesses to the fall, and the evidence showed that plaintiff had to lean away from the ladder to paint the trim without anything

more than the trim to hold. Moreover, it is not inappropriate for the Commission to find that the cause of an employee's fall is "unclear." *See id.* at 685, 44 S.E.2d at 78 (noting that the "exact cause of the fall is not determined" but that the record supported the Commission's finding that the accident arose out of the employment). This is true even where there is some evidence providing possible explanations for the fall. *See Taylor,* 260 N.C. at 438-39, 132 S.E.2d at 867-68 (rejecting the defendant's explanation of the accident as arising from the plaintiff's angina where there were facts to support the Commission's finding and conclusion that the accident arose out of the plaintiff's employment).

As part of their argument that plaintiff's fall was caused solely by his idiopathic condition, defendants also challenge the Commission's findings and conclusions regarding the risk created by plaintiff's position on the ladder. Under *Hollar,* 48 N.C. App. at 496, 269 S.E.2d at 672, "where the injury is associated with any risk attributable to the employment, compensation should be allowed, even though the employee may have suffered from an idiopathic condition which precipitated or contributed to the injury." *See also, e.g., Allred v. Allred-Gardner, Inc.,* 253 N.C. 554, 557, 117 S.E.2d 476, 478-79 (1960). Similarly, where the cause of a fall is unexplained, but related to a "risk or hazard incident to plaintiff's employment," the injury will be compensable. *Janney v. J.W. Jones Lumber Co.,* 145 N.C. App. 402, 407, 550 S.E.2d 543, 547 (2001) (citing *Robbins v. Hosiery Mills,* 220 N.C. 246, 248, 17 S.E.2d 20, 21 (1941)).

As stated above, the Commission found that the cause of plaintiff's fall was "unclear" and that any role his idiopathic condition played in the fall was partial. The Commission also found that "[c]limbing and painting on a 32-foot ladder, particularly with no harness or other safety equipment, are inherently risky activities that are attributable to plaintiff's employment as a painter" and that "special hazards attributable to or incidental to plaintiff's employment existed and, in fact were a contributing proximate cause of plaintiff's accident and resulting injuries."

There was evidence in the record that being atop a ladder is dangerous and that plaintiff himself felt insecure on the day of the accident as he leaned back from the ladder with no harnesses in order to paint the exterior trim. This evidence supports the Commission's findings regarding the hazard posed by working on a ladder. Furthermore, the Commission was entitled to infer from that evidence, as well as evidence of the fall from the ladder and

the nature of the injury, that the hazard contributed to plaintiff's injury.

In *Allred*, 253 N.C. 554, 558, 117 S.E.2d 476, 479, the claimant was driving a truck for work when he blacked out and hit a pole. The fact that the plaintiff blacked out due to an idiopathic condition and that he was driving a truck for work at the time was sufficient to support a finding that the accident arose out of claimant's employment. No findings were required that the claimant's injury was made more severe or caused solely by the fact that he was driving a truck. Rather, the Court made the "common sense" observation that "[h]ad he been in the office or walking on the street, probably no injury—certainly not this one—would have occurred." *Id.* at 557, 117 S.E.2d at 478. A similar conclusion by the Commission was reasonable in the present case.

Defendants rely heavily on *Vause v. Vause Farm Equipment Co.*, 233 N.C. 88, 63 S.E.2d 173 (1951), claiming that its facts resemble those in the case at hand, thus requiring a similar outcome. In *Vause*, an employee who had epilepsy was driving for work when he sensed an oncoming seizure. He pulled off the road and laid down across the seat of the truck before losing consciousness. When he came to, the plaintiff was hanging out the driver's side door from the steering wheel and had injured his left leg. The Supreme Court held that the Commission's finding that driving a truck for work exposed the plaintiff to a special hazard was supported by evidence in the record. *Id.* at 98, 63 S.E.2d at 180. However, the Court then held that because the plaintiff was not driving at the time of his accident, but rather had positioned himself in a "place of apparent safety," there was "no showing that any hazard of the employment contributed in any degree" to the accident and injury. *Id.* In the case at hand, plaintiff was not in a position of safety at the time of his accident; he was 30 feet up a ladder. Therefore, *Vause* is not analogous to the case at hand.

Based on its findings of fact, the Commission concluded that:

Hazards or risks incidental to plaintiff's employment existed, and were a contributing proximate cause of plaintiff's accident and resulting injuries. Therefore, plaintiff's injury arose out of plaintiff's employment, even though an idiopathic condition . . . may have contributed to the accident and, as a result, plaintiff's injury by accident is compensable under the . . . Act.

OKALE v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[153 N.C. App. 475 (2002)]

These conclusions were supported by the findings of fact and correct as a matter of law. Therefore, we affirm the Industrial Commission's ruling that plaintiff sustained a compensable injury by accident and is thus entitled to the permanent total disability benefits awarded by the Commission.

[2] Defendants also challenge the Full Commission's award of attorneys' fees to plaintiff under both G.S. § § 97-88 and 97-88.1. The two statutes allow the award of fees and costs on different bases. G.S. § 97-88 permits the Full Commission or an appellate court to award fees and costs based on an insurer's unsuccessful appeal. G.S. § 97-88.1, on the other hand, allows an award of fees only if defendants were without reasonable grounds to defend the claim. In their brief, defendants' argument against the fee award addresses only the issue of unreasonable defense, not whether the Commission should have awarded fees based on the unsuccessful appeal. Therefore, based on Rule 28(b)(6) of the Rules of Appellate Procedure, we decline to address whether the award was properly based on G.S. § 97-88. Moreover, because the Commission did not apportion the $800.00 award between the two statutes and we may assume that the entire award would have been proper under § 97-88, this Court need not address whether the award was proper under § 97-88.1. Therefore, the award of attorneys' fees by the Full Commission will not be disturbed.

Affirmed.

Judges TYSON and THOMAS concur.